BETHIA E. DISBROW, Respondent, v. JOHN W. MILLS, Surrogate, etc., Appellant.

It is the duty of a surrogate on entering upon his office, before paying out any portion of the surrogate's fund turned over to him by his predecessor, to ascertain from what sources it was derived and who is entitled thereto.

The transfer of the fund should be accompanied with an account showing the estates or persons to whom it belongs, and this he should properly examine and test; and if he receives the fund without such an account and examination, he incurs the risk of any errors resulting from such neglect.

Accordingly *held*, where a surrogate, without making such inquiry or requiring such account, received the fund and in ignorance of any deficiency paid orders of his predecessor as presented to him until the fund was exhausted, and in so doing paid out moneys belonging to one party to others, that he was personally liable.

(Argued April 9, 1875; decided October 5, 1875.)

APPEAL from judgment of the General Term of the Supreme Court in the second judicial department, affirming a judgment in favor of plaintiff entered upon the report of a referee. (Reported below, 2 Hun, 132; 4 T. & C., 682.)

This action was brought to recover certain moneys alleged to have been paid over to defendant as surrogate of Westchester county, by his predecessor in office, belonging to plaintiff.

The referee found the following facts, in substance:

Reuben H. Coles was surrogate in said county from January 1st, 1856, until his death in January, 1862, and upon his death Silas D. Gifford became, and was, such surrogate during the rest of the year 1862. Stephen R. Disbrow died intestate, being at the time of his death a resident of said county, and letters of administration upon his estate were granted December 4th, 1855, to James Disbrow. In 1858, on proceedings upon the final accounting of said administrator before Surrogate Coles, the distributive share of Alfred Disbrow in said estate was found to be $2,653.19. This sum, in accordance with the decree of the said surrogate, was paid over to the surrogate in 1858, for which he gave his official receipt. On January 17th, 1859, the surrogate invested the moneys so paid him in a note of Thaddeus Davids & Co., made by them payable to their own order for $2,653.19, and indorsed by them to said Coles. On April 27th, 1861, said Coles surrendered said note, received the interest thereon and took a new note in renewal. Coles died in January, 1862, and his administrators collected one year's interest on said last mentioned note; and afterward, on or about June 10th, 1862, indorsed and delivered said note to S. D. Gifford, surrogate, as belonging to the late surrogate's accounts, and took his official receipt therefor. Gifford, on June 10th, 1862, received a check of said T. Davids & Co. of that date to his order, as surrogate, for the amount of the note, $2,653.19, which check he, on the same day, deposited in the New York Life Insurance and Trust Company to the credit of his official account as surrogate, the same being his last deposit therein; and said moneys so deposited remained there until transferred to his successor in office, and appears as a separate item in his official account in said company. After the accession of the defendant to the office of surrogate, Gifford, on January 7th,

1863, transferred to him the sum of $7,267.89, the balance of his official account, which sum was made up in part of the said sum of $2,653.19, taking defendant's official receipt therefor. Defendant, on various times, drew the moneys so transferred to him until the principal sum of the moneys transferred to him was reduced to $1,359.95. The residue of said fund, to wit, $1,359.95, has since remained, and still remains in said trust company, to the credit of the defendant's official account, with the interest thereon. Defendant received from his predecessor, in all, the sum of $10,151.88, and paid to persons having just claims, including his fees, $8.682.58, leaving in his hands out of the moneys transferred to him the sum of $1,469.30. The moneys so paid were paid without any attempt to trace the moneys, or funds specifically into the defendant's hands, the instruments out of which the claims arose, or to identify as belonging to the persons so paid the moneys or funds transferred or paid to the defendant by his predecessors; but such payments were made by defendant as from a sum in bulk, without reference to whom any particular money or fund included therein in fact belonged. An account-book, called "day-book," which was kept among the other official books of the surrogate's office, contained the accounts of the estate of S. R. Disbrow, deceased, in the hand-writing of said Coles, and showed the receipt by Surrogate Coles of said sum of $2,653.19, as aforesaid, without any discharge thereof. The same book contained most of the other accounts paid by the defendant, and was in use by him for that and other purposes and was the proper book of reference for such accounts, and was the one wherein such official accounts were kept by Surrogate Coles and his successors. Defendant on receiving from Gifford the said sum of $7,267.89 made no inquiry or attempt to ascertain to whom said money belonged, or whose claims were in fact represented thereby. Plaintiff was assignee of the claim of Alfred Disbrow.

*Amasa J. Parker* for the appellant. Defendant was not bound to make up the deficiency in the fund. (*Grenfell* v.

Statement of case.

*Suydam*, 3 Sandf., 133; *Seaman* v. *Patten*, 2 Cai., 311; *Jenner* v. *Joliffe*, 9 J. R., 381.)

*Addison Brown* for the respondent. Plaintiff's fund of $2,653.19 having been traced specifically into defendant's hands, he became thereby liable for it. (*Van Alen* v. *Am. Nat. Bk.*, 52 N. Y., 1; 56 id., 483; *Merrill* v. *Bank of Norfolk*, 19 Pick., 372; *Hutchinson* v. *Reed*, 1 Hoff. Ch., 336; 50 Barb., 297; 1 Atk., 172; Hill on Trustees, 164; *Pinkel* v. *Wright*, 2 Hare, 120, 129; *Pennell* v. *Deffell*, 4 De G., M. & G., 372.) Defendant is liable for the rest of plaintiff's fund because he converted it to his own use by drawing it from the trust company and drawing against it in his own private bank. (*Dumont* v. *Carpenter*, 3 J. R., 184; 24 Wend., 518; 12 J. R., 281; 1 J. Cas., 205; 6 Exch., 349; 17 Mass., 563.) Plaintiff could not thus be deprived of her property without her fault or consent. (*Hoffman* v. *Carew*, 22 Wend., 318; *Bennett* v. *Spofford*, 45 N. Y., 387.) Defendant knew the moneys to be trust moneys, and it was his duty to inquire and ascertain to whom they belonged. (Lewin Tr., 280; Perry Tr., §§ 266, 962; Hill Tr., *574; *Dagley* v. *Tiffany*, 1 P. Wms., 285; 4 Ves., 369; 1 J. Ch., 4; L. R., 15 Eq., 204.) Good faith cannot avail against a plain breach of trust. (*Baskin* v. *Baskin*, 4 Lans., 95; Perry Tr., §§ 926, 927; Lewin Tr., 281; *Ackerman* v. *Emott*, 4 Barb., 620.) All deposits with a surrogate are by law the special property of particular persons or estates who are entitled to the specific property or securities, and for the payment of which his sureties are bound. (1 R. S., *382, § 87; 2 R. S., *91, §§ 52, 54, *104, 105, §§ 22, 35, 37, 43, 45; Laws 1850, chap. 150, § 2; *Seaman* v. *Duryee*, 1 Kern., 330; 4 Lans., 95; Perry Tr., § 265.) Defendant was liable, having paid out the funds without inquiry, examination or proof as to whom they belonged, he having full means of knowledge. (2 R. S., *223, § 7, sub. 3, § 8; Hill Tr., *522; 1 Bro. C. C., 583; Younge, 507; Perry Tr., § 841; 1 J. Ch., 575; 2 Ves. Jr., 437; *Oliver* v. *Piatt*,

3 How. [U. S.], 410; *Williamson* v. *Brown*, 15 N. Y., 354.) In making the payments, defendant's action was purely ministerial. (*Hicks* v. *Dorn*, 42 N. Y., 53; 1 Lans., 87; 34 N. Y., 389; 1 Paige, 76; 23 Barb., 187; *Adsel* v. *Brady*, 4 Hill, 630; Perry Tr., § 928; Lewin Tr., 283; 5 Paige, 442.)

RAPALLO, J. We have examined this case with care as it presents features of apparent hardship upon the defendant. He appears to have acted in good faith, and the loss for which he has been held responsible originated not from any pecuniary default on his part, but from a misapplication by some of his predecessors in office, of a portion of the surrogate's fund. How or when this diversion of the fund occurred, whether through mistake or wrong, does not appear. All that is certain is that a deficiency exists, and that the plaintiff's money has been applied by the defendant to supply that deficiency. There is no just ground upon which the plaintiff can under the circumstances be made to bear this loss. The money which she claims is clearly traced into the possession of the defendant. It was paid to Surrogate Coles, and by him invested in a note of Thaddeus Davids & Co., for the precise amount received $2,653.19. In 1862, after the death of Surrogate Coles, his administrators transferred this note to his successor in office, Surrogate Gifford, who immediately collected it, and deposited the specific proceeds to his own credit as surrogate, in the Life and Trust Company where they remained until the expiration of his term of office. Thereupon, on the 1st of January, 1863 the whole balance standing to his credit in the trust company was transferred to the credit of his successor, the defendant.

It does not appear in the case that the defendant had actual knowledge that the balance transferred to him by his predecessor included this particular amount now belonging to the plaintiff. The defendant appears to have accepted the transfer without inquiry as to who were the owners of the fund which he received, and to have gone on paying all orders presented to him on the assumption that the surrogate's fund

was intact, and sufficient to meet the demands of all just claimants, until it was discovered that the fund was insufficient to pay all, and that there was not enough remaining to meet even the amount belonging to the plaintiff. The defendant had therefore paid out to other parties a portion of the money which belonged to the plaintiff. The defendant's ignorance of the fact that the fund was insufficient to meet the demands of all, and that he was encroaching upon moneys belonging to the plaintiff, does not in our judgment absolve him from legal responsibility for this misapplication of the plaintiff's money. We think that a proper regard for the rights of parties interested in these trust funds deposited with surrogates requires that accounts should be kept in such manner as to show to what estates or parties the fund in the hands of a surrogate belongs, and that on entering upon that office and receiving from his predecessor what purports to be the surrogate's fund, he should before paying out any part of it ascertain from what sources it is derived and who are the parties entitled to it. If without any such inquiry the surrogate receiving the fund goes on blindly paying all orders of his predecessors which may be presented to him, until the fund is exhausted, he acts at his own peril; and if as in the present case it turns out that through the omission of such inquiry he has paid out to one or more parties moneys belonging to others, he ought to be held responsible. It is obvious that unless such responsibility is enforced, these funds are left in a most insecure condition. Each surrogate going out of office may simply turn over to his successor in gross the balance standing in bank to his credit as surrogate, drafts may be drawn against it as orders are presented and this process may be repeated from time to time as often as changes in the office occur. Many years may elapse before it is discovered that a deficiency exists in the fund and when discovered it is impossible to ascertain who is the delinquent, or whose funds have been misapplied, and the loss, necessarily but unjustly, falls upon the parties last applying for payment. This evil can only be prevented by holding every surrogate

responsible for the fund which he receives, and for its proper application, or at the least for a reasonable degree of diligence in ascertaining whose funds he receives, and that he pays to the proper parties. This would require that the transfer of the fund should be accompanied with an account showing the estates or persons to whom it belongs, and one who receives the fund without such an account or who receives the account neglecting to properly examine and test it, incurs the risk of any errors which may occur in consequence of such neglect. In the present case it appears that there was a book kept in the office, an examination of which would have disclosed a credit to the Disbrow estate of sums amounting in the aggregate to the precise amount now in dispute, and a comparison of that credit with the account kept with the Trust Company would have shown a deposit of that same amount, $2,653.19, to the credit of Surrogate Gifford, and that it was included in the balance transferred to the defendant. All these books were accessible to the defendant, and it is therefore evident that if he had used due diligence to ascertain the sources from which the fund he received was derived, he could have learned at least the history of the particular money now in controversy and avoided the mistake which has occurred.

For these reasons we concur in the conclusion of TALCOTT, J., at General Term, and, on substantially the same grounds stated by him, affirm the judgment.

All concur; except ALLEN, J., not voting.

Judgment affirmed.